TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-08-00101-CR







Manuel Barrientes, Appellant



v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT


NO. D-1-DC-05-201674, HONORABLE MICHAEL LYNCH, JUDGE PRESIDING






M E M O R A N D U M O P I N I O N



A jury found appellant Manuel Barrientes guilty of the aggravated sexual assault of
a child, and the court assessed a twenty-four year prison term. See Tex. Penal Code Ann. § 22.021
(West Supp. 2008). Appellant brings forward four issues urging that his statement to the police
should have been suppressed, a pretrial photographic identification was impermissibly suggestive,
and a photograph of the complainant and a recording of a telephone call were erroneously admitted. 
We overrule these contentions and affirm the conviction.

On April 1, 2005, the thirteen-year-old complainant was sexually assaulted in the
back seat of an automobile by two men who called themselves "Manny B" and "Big C." The
complainant had met the men earlier that afternoon at a convenience store. The complainant was
taken home by the men following the assaults. She immediately told her mother what had happened,
and her mother called the police.

This incident received a large amount of media coverage, which in turn generated
numerous calls to Crime Stoppers. From information received in these calls, the police were able
to identify "Manny B" as appellant and "Big C" as Duran Souza. On April 6, the complainant was
interviewed by a victim's services counselor and shown two sets of six photographs, one of which
contained a photograph of appellant. The complainant identified appellant's photo as "Manny B." 
Also on April 6, appellant called Crime Stoppers, identified himself, and was connected to Officer
Anthony Nelson. Appellant told Nelson that he and Souza wanted to meet with him and tell their
side of the story. Nelson agreed to meet appellant and Souza in a parking lot near the police
department's child abuse office. Nelson testified that before meeting appellant, he ran a warrant
check and learned that there were outstanding warrants for appellant's arrest. (1)

The meeting took place as arranged. Nelson frisked both men for weapons, noticed
the odor of marihuana, and advised them not to bring drugs to the interview. Nelson then instructed
appellant, who was driving his own car, to follow Nelson's vehicle to the police office. Nelson
testified that as he waited at a red light, he noticed in his rear-view mirror that appellant and Souza
had "a little panic in their faces." When the light turned green, appellant did not follow Nelson but
instead turned "and began to evade." Nelson pursued appellant and called for backup. Appellant
was stopped, and both he and Souza were handcuffed and transported to the child abuse office. 
There, appellant gave a written statement in which he admitted having sexual intercourse with the
complainant but claimed that it was consensual.


STATEMENT


 Appellant objected to the admission of his written statement on the ground that it was
the product of an unlawful warrantless arrest. The trial court overruled this contention after finding
that there were outstanding warrants to arrest appellant, albeit not for this offense. The court further
ruled that the police were authorized to arrest appellant without a warrant because they had probable
cause to believe that he had sexually assaulted the complainant and there were exigent circumstances
that justified them in the belief that there was no time to procure a warrant. 
See Tex. Code Crim. Proc. Ann. art. 14.04 (West 2005).

Appellant urges that the trial court erred by relying on the outstanding warrants to
justify his arrest. He points out that Nelson testified that he had no prior intention to arrest appellant
that day and argues that "the determination to arrest [appellant] had everything to do with [appellant]
deciding not to voluntarily make a statement to the police, and not any potentially outstanding
warrants." Appellant did not make this "pretext arrest" argument to the trial court. Moreover, the
validity of an arrest is not determined by the subjective motivations of the officer who makes the
arrest but by the objective facts surrounding the arrest. Garcia v. State, 827 S.W.2d 937, 943-44
(Tex. Crim. App. 1992). The objective fact is that Nelson knew that there were outstanding warrants
for appellant's arrest. Finally, appellant does not challenge the trial court's alternative ruling that
the arrest was lawful under article 14.04. (2) For all of these reasons, we overrule appellant's
contention that his written statement was tainted by an unlawful arrest and that the trial court erred
by overruling his objection to its admission on that ground. 

Appellant also objected to the admission of his statement on the ground that he was
not shown to have voluntarily waived his rights under Miranda and article 38.22. 
See Miranda v. Arizona, 384 U.S. 436 (1966); Tex. Code Crim. Proc. Ann. art. 38.22, § 2
(West 2005). Appellant does not deny that he was advised of his rights, but he complains that he
was never asked if he wished to waive his right to remain silent. 

Appellant's statement was taken by Officer Anthony Bigongiari. The officer testified
that he advised appellant of his rights before questioning him, that appellant appeared to understand
those rights, and that appellant told him that he wanted to make a statement. Bigongiari
acknowledged that after advising appellant of his rights, he never specifically asked appellant if he
wished to waive those rights. The trial court ruled that no "magic words" were required and that the
totality of the circumstances demonstrated that appellant made a knowing and voluntary waiver of
his right to remain silent. 

The Supreme Court has held that a waiver of the right to remain silent may be inferred
from the actions and words of the suspect, and that "an explicit statement of waiver is not invariably
necessary." North Carolina v. Butler, 441 U.S. 369, 373-76 (1979). The "blue card" from which
Bigongiari read appellant his rights was introduced in evidence. On the back of the card is the
preprinted statement, "I have received and understand the warning on the other side of this card. I
agree to waive these Rights and to make a Statement." Appellant signed the card below this
statement after being advised of his rights. Below appellant's signature are the date, the time, and
Bigongiari's signature as witness. The written statement itself also begins with a listing of
appellant's rights, each initialed by appellant. Below this is the statement, "I do hereby knowingly,
intentionally and voluntarily waive my right to be silent and my right to have a lawyer present to
advise me. I make the following statement in writing without any threats or promises of any kind
having been made to me." We agree with the trial court that the record demonstrates that appellant
knowingly and voluntarily waived his rights under Miranda and article 38.22, including the right
to remain silent. 

No error in the admission of appellant's written statement to the police is presented. 
Issue one is overruled.


IDENTIFICATION


By his fourth issue, appellant challenges the propriety of the April 6, 2005,
photographic lineup in which he was identified by the complainant. He contends that this photo
lineup was unduly suggestive, and that the trial court erred by admitting both the evidence of the
pretrial photographic identification and the complainant's in-court identification. 

The record reflects that appellant objected to the testimony of the victim's services
counselor who conducted the photographic lineup, but he did not object to the complainant's in-court
identification. Because appellant did not present to the trial court his contention that the in-court
identification was tainted by the earlier photographic lineup procedure, this contention was not
preserved for review. See Tex. R. App. P. 33.1(a).

A photographic lineup must contain individuals who fit the rough description of the
suspect, but it is not essential that each individual photograph be identical. 
Brown v. State, 64 S.W.3d 94, 100 (Tex. App.--Austin 2001, no pet.). In Brown, the defendant
contended that the photo spread was impermissibly suggestive because his photograph was
overexposed, making it distinguishable from the others. Id. We noted, however, that each of the
six photographs in the spread was of a young African American with short hair and comparable
facial features, each man was wearing similar clothing, and the backgrounds of all the photographs
were similar. Id. We also noted that the complainant was not told that a suspect was included in the
spread. Id. at 101. We held that the photographic array was not impermissibly suggestive. Id.

In the case now before us, the victim's services counselor showed the complainant
two sets of six photographs. Appellant's photograph was in only one of the sets, and his was the
only photograph identified by the complainant. (3) The counselor testified that before showing the
complainant the photographs, "I told her that the suspects in the case may or may not be included
in the lineup and that she should not feel compelled to identify somebody." The challenged photo
spread consists of six photographs of young Hispanic males, each of whom has short hair and is
wearing a black shirt. All six photographs appear to have been taken against a blank background
but, for some reason, the backgrounds in two of the photographs, including appellant's, are
noticeably darker than the backgrounds in the other four photographs. Appellant contends that this
difference in the background darkness rendered the photo spread impermissibly suggestive. 
Considering the totality of the circumstances, however, we agree with the trial court that this
one factor did not unduly single out appellant's photograph so as to render the identification
procedure impermissibly suggestive.

The trial court did not err by admitting evidence of the complainant's pretrial
identification of appellant. Issue four is overruled.


OTHER ISSUES


In issue two, appellant contends that the trial court erred by admitting
State's exhibit one, a recording of the 911 call made by the complainant's mother after the
complainant told her about the assault. Appellant contends that because both the complainant and
her mother testified, the recording was cumulative and its probative value was outweighed by the
danger of unfair prejudice. See Tex. R. App. P. 403. 

In issue three, appellant contends that the trial court erred by admitting
State's exhibit two, a photograph of the complainant. The complainant's mother testified that the
photograph, which appears to be an ordinary studio portrait, accurately shows the complainant's
appearance in 2005. Appellant contends that because the complainant's age and appearance were
not at issue, this exhibit was also more prejudicial than probative. 

Appellant objected to the admission of the 911 recording, but not on the ground he
now urges on appeal. See Tex. R. App. P. 33.1(a). Appellant did not object to the admission of the
complainant's photograph. Appellant argues, however, that the admission of the photograph was
"plain error" under federal case law. Although not cited by appellant, we also note that the rules of
evidence allow the consideration on appeal of fundamental errors affecting substantial rights even
though they were not brought to the attention of the trial court. Tex. R. Evid. 103(d).

Appellant refers us to no case authority holding that the admission of similar evidence
under similar circumstances was plain or fundamental error. We find no basis in the record for
concluding that the admission of either exhibit one or exhibit two was so manifestly improper as to
constitute fundamental error that should be considered in the absence of a pertinent trial objection. 
Issues two and three are overruled.

The judgment of conviction is affirmed.



 ___________________________________________

 J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Puryear and Pemberton

Affirmed

Filed: March 18, 2009

Do Not Publish
1. Another officer testified that the warrants were for a probation violation and some traffic
tickets.
2. In a single sentence in his brief, appellant asserts that "the facts of this arrest do not meet the
facts of Article 14.03 of the Code of Criminal Procedure." See Tex. Code Crim. Proc. Ann. art.
14.03 (West Supp. 2008). The trial court did not cite article 14.03 as a basis for its ruling.
3. Appellant challenges only the set of six photographs that included him. The second set of
photographs does not appear in the record.